We will hear argument next in Zayo Group v. Norfolk Southern Railway Company, and Mr. Hurd, whenever you're ready. May it please the Court, for the record, I'm William Hurd with the Council Table, Anne-Marie D'Amato Cleary. The District Court made a mistake of law by blurring two very distinct aspects of eminent domain. There is the delegation process, and there is the ensuing condemnation lawsuit. The State Corporation Commission is involved in the delegation process, but it does not hear the condemnation lawsuit. That lawsuit must be filed in a State Circuit Court. So the SCC cannot transfer any property interest. The District Court thought that it could. You see that at JA-169, and that was simply wrong. And that error was the foundation of the District Court's decision not to remand the case back to the SCC. We never reached the point... This is just a factual thing. It may not matter. But if the SCC makes a determination on public necessity, and then there's a lawsuit that follows it, is the SCC's determination of those issues preclusive, or does the Court look at those again for that specific issue? Your Honor, it is not preclusive, and let me explain at least two reasons why. First, we contend that the action by the SCC is legislative, not judicial, and obviously a legislative decision cannot have any preclusive effect in a court. But even if you determine that the decision by the SCC is judicial in nature, there is still no preclusive effect because the standards are different. In the SCC, in order to block a delegation of eminent domain authority, Norfolk Southern would have to show that the interests at stake are essential, essential to Norfolk Southern's operations. That is a very, very high bar. It is a higher bar than the bar set by Federal law for preemption, which only requires that a conflict exists, or that tipping those property interests at stake would unreasonably interfere with railroad operations. So your point is if the SCC says public necessity, they go to court and they re-litigate the whole public necessity over and over again? No, Your Honor. The public necessity point is not an issue in a condemnation case, and the preemption issues are different. The preemption issues look only at what are we doing to the railroad? Not the public's interest. What are we doing to the railroad? Are we conflicting with the railroad? Are we unreasonably interfering with the railroad? Those are the preemption issues. So if we were to be granted the authority from the SCC, and we go to state court and file a lawsuit, they would have the exact same Federal preemption arguments that they could make if we never had. Forget preemption. Let's assume we're not talking about preemption at all. Just your run-of-the-mill condemnation case. Yes, sir. Someone says I'm using this SCC process and I want to condemn that property. I thought they had to establish public necessity of some sort. No, Your Honor. They do not in Virginia. That's not part of this at all? No, sir. Not in an ordinary condemnation lawsuit. You simply establish the authority of the condemnor to condemn the interest at stake. What makes these cases different is that the railroad can argue Federal law preemption. Go ahead with your argument. So the purpose of the petition with SCC was simply for ZAO to obtain the legal authority to file a condemnation lawsuit. It was not a condemnation lawsuit. On page 37 of its brief, Norfolk Southern appears to agree with us on that. Demand and demand authority starts with a State legislature. It is an aspect of sovereignty. In some States, legislatures may make these decisions directly. In Virginia, that job has been given to the State Corporation Commission. And so we don't believe that the Termination Act can interfere with that delegation decision any more than it could interfere with that delegation decision if made directly. Counsel, can I just ask you a question because I want to make sure I'm following your argument. Are we talking or are you arguing now, is this a reason why the Commission is not a State court for purposes of removal or is this part of your preemption argument? This is why it is part of a preemption argument, actually, Your Honor. We don't think the SCC is a State court, but we don't think it matters. We think even if their power is quasi-judicial, even if they are a court, the Termination Act does not block their granting of the authority to ZAO any more than it blocks the authority of a State legislature. Now that I understand your argument, may I ask a question? So you're basically saying like preemption would kind of be premature at this point. Exactly. Okay. Exactly. But why does it matter for preemption purposes that the State has sort of effectively bifurcated what's usually one judicial proceeding, right? If we were just in front of, just imagine they didn't bifurcate it, we're in front of a State court. Would you say that that State court action is not bifurcated when they talk about public necessity or the right to condemn, that it doesn't actually get preempted until the moment that the State proceeding sort of condemns the property, sets the price, the just compensation amount? Why would we split this into two things? Well, so what the Termination Act preempts, if at all, is the taking of an interest in the property. Right. So if it were just a State court proceeding, is there no preemption until the moment when they hit the gavel and said it's taken? The preemption issue would be right the moment that ZAO filed the State law condemnation action. That's the action where we, ZAO, are now seeking to obtain a property interest in Norfolk Southern's property. Can you just sort of practically, why does it, and I have the same question for your colleague, if we just assume for a moment this same action would be preempted when it gets over into State court, why is it important practically that it not be preempted until then? Two reasons, one legal, one practical. The legal reason is that because the Termination Act does not completely preempt the delegation of authority, the District Court had no subject matter jurisdiction. What's the practical reason? The practical reason is that we don't know exactly what kind of easement or interest we're talking about until the condemnation action is filed. We know what we've asked the SCC for. They may not give us all that we ask for. We may not ask in State court for all that they give us. So if we're going to see if the specific interest being sought by ZAO is preempted, we have to see exactly what that is, and that means we must await the filing of a State law condemnation action. So they just jump the gun. It's premature. Now, we do believe that complete preemption would not apply here. So, Counsel, can I ask, I want to hear you on that, but I want to ask a question, make sure we get it out before the time is allotted. Assume we affirm on complete preemption, but assume we have questions about whether this is a State court proceeding. District Court, presumably there wasn't removal jurisdiction. But if we've decided that the District Court was right, or if we've decided that there is complete preemption, are you saying it is the result that we would send it back for the State court to handle something that we've already said is completely preempted and subject to exclusive Federal jurisdiction? Well, if you decide that the SCC is not a court for purposes of the removal statute, then I think there's no subject matter jurisdiction to proceed to the next question. What if in the course of doing that, we take up the complete preemption, the original jurisdiction prong of the analysis, and we say it was completely preempted. I know you've got a different argument, so this is just a hypothetical. But do we still send it back if we've already decided something is completely preempted? Maybe we need to just from a pure technical jurisdiction standpoint. But it seems kind of silly, doesn't it? If it's completely preempted and there's exclusive Federal jurisdiction, maybe we need to do it just to go through the motions. Well, I think you do for one reason would be that if this proposed taking as described in the petition is wholly preempted, completely preempted, what about some modification of that? And it may well be that if the court were to say, well, this thing as it's now drawn is completely preempted, we go back to square one, in fact, we try to do that with amended complaint. So if we're going to decide it is wholly preempted, we need some guidance on why, so we can try to work around it. Can I ask you a question sort of following up on Judge Caldwell's question? I also wondered about this. The way at least the district courts have kind of addressed the question of whether something is in fact a State court proceeding, they put a lot of weight on the weightiness of the Federal interest in the issue. If we thought this was completely preempted, would that factor in to whether we think this is a State court proceeding under that weight of the Federal interest factor? Do you know what I mean? Well, that's part of the function. That's part of the functional analysis which we, and I'll briefly argue the question. I guess I'm asking you to assume hypothetically. Oh, my gosh, let me finish my question. I'm asking you to assume hypothetically. We're applying this functional analysis that the district courts are mostly using where they do consider the weight of the Federal interest. So I'm asking you whether these two inquiries are in that way related? We think that the State interest in where eminent domain authority is allocated, which is all the SEC is involved in, that question, the State interest predominates. On the question of if that authority is exercised in a condemnation proceeding, then we get into complete preemption or ordinary preemption. But the district court erred, as do our friends on the other side, by taking the position that all underground utility easements are wholly preempted. They say that Skidmore says that. Skidmore does not say that. Skidmore involved, quote, an easement, but it was an easement in name only, the court said, for all intents and purposes, the same as her claim for adverse possession because through it she hopes to exclude Norfolk Southern from the land on her side of Loop Creek. An underground utility easement does not exclude the railroad from the land. Are you talking about the prong of complete preemption that talks about displacement of State law or the prong that talks about the creation of a cause of action? The displacement of State law. And you don't think Skidmore goes a long way towards answering that question? Skidmore does not answer the question of all underground utility easements preempted. That's their position, all of them. All of them are preempted. Whether they go this way or that way, across the tracks, doesn't matter. But doesn't Skidmore talk about an adverse possession claim being regulation of a railroad? Yes, taking the surface of the land would be completely preempted, Your Honor. A so-called easement that does the same thing would be preempted. But underground utility easements are not subject to complete preemption. They are subject to ordinary preemption. Depends on the facts of the case. Depends on the facts of the case. And we never got to that. We never had any factual discovery in this case. And number two, even it doesn't really matter because once you say that there is complete preemption. May I finish? Oh, yes, please. Once you decide there is no complete preemption, the District Court has no option but to remand the case back to the SCC. SCC does its job to grant authority. We come back into the State Court and they are then able to argue complete preemption, excuse me, not that, argue ordinary preemption by the use of facts. Can I just ask one question because I have not understood this? After Skidmore, isn't all preemption under this provision complete preemption? I mean the complete preemption question is a statutory interpretation question. And we have read this exclusivity provision to reflect the necessary congressional intent that anything that is effectively regulating railroad operations or property is completely displaced. So I don't understand how there can be two different kinds of preemption under the same provision when the question is what congressional intent that provision reflects. Well, this Court has said, and it said it again in Skidmore, that we look to the Service Transportation Board for its interpretation of the Termination Act. The Service Transportation Board recognizes there is complete preemption in some cases and in other cases the issue is only whether there is ordinary preemption. Are you talking about the kind of facial as applied thing that the Board does? In part, yes. So if the taking is such as to conflict with or regulate the railroad, that is complete preemption. But Skidmore, which is what the District Court relied upon, does not say that all underground utility easements are preempted. As STB has pointed out, that is a case-by-case decision, which lower courts, state courts, federal courts, are completely able to answer. So for those reasons, we ask that you reverse the decision by the District Court. Thank you. Got some rebuttal time. Mr. Los Eaton. Good morning, Your Honors. Judge Quattlebaum, your first question went to the heart of this case. The Corporation Commission proceeding does not only give ZAO permission to file the condemnation action, it is also preclusive on the merits of the condemnation action. What is the authority for that? The authority is the statute, which you find at page 37 of our brief, that governs the showing required in a condemnation proceeding, which is Virginia Code 25.1-206. That statute spells out essentially three substantive issues that go to the condemnation petitioner's entitlement to actually take the land. That's in the litigation that ensues? In the circuit court, yes. And what's the authority? So I looked at that, I think, and it looked like the statute providing what must be shown in the litigation has some of the same elements that go before the SEC. Yes. But what tells me whether the SEC's determination is preclusive? Well, as a general matter, Your Honor, the Virginia Circuit Courts afford preclusive effect to SEC judgments. You've got a case. I'm trying to get something. I'm not saying I don't believe you, but I'd believe you more if you gave me a case or something. Yes. So if you look at page 23 of our brief, you'll see a citation to Virginia Code 12.1-39, which incorporates a requirement that actually comes from the Virginia Constitution itself, which holds that circuit courts lack jurisdiction to review, reverse, correct, or annul any decision by the Corporation Commission. Corporation Commission decisions are not collaterally attackable. They can only be assaulted by a direct appeal as of right to the Virginia Supreme Court. So once the Corporation Commission has decided an issue, it has binding and preclusive effect on a circuit court. And the standard that Zao has asked the Commission to apply here, public necessity or essential public convenience, is dispositive of the three issues that would dictate its entitlement to actually take the property in a circuit court proceeding. That's authority for the taking, necessity, and public use. So the certificate... Can I follow up? Of course. I'm sorry. I asked you a question, then I interrupted. But I want to assume that's right, that there's no permissive collateral attack. Does it... When you said that is dispositive, doesn't it still matter whether the decision is a state court decision or either in a formal way or a functional way? And if it's not a state court formally, you have to win on that. We go with function. And then on the function, you have to win that that decision, even if it's preclusive, is judicial and not legislative. Am I right just with the ground rules on that? I think that's right, Your Honor. So certainly we do have to win in order for you to affirm removal on whether the Corporation Commission is a state court in this proceeding. And it's not a formal state court. You agree with that, right? Actually, I don't think I do agree with that, Your Honor. The Virginia Supreme Court has held in a long line of cases that the State Corporation Commission formally exercises the state of Virginia's judicial power, including the constitutional authority to decide questions the same way that any other court of record does. It does so using adjudicatory procedures. The Virginia Supreme Court has also said that what it does in this exact kind of proceeding is judicial. But we're talking about a federal statute. And I think what Virginia courts say matters. But it's really probably, I mean, I know it's a debated issue, but it seems like what a federal statute means is a matter of federal law. It is absolutely a question of federal law, Your Honor. But the Supreme Court said in Road Improvement District, which is cited in our brief, that the way the state courts characterize the state tribunal and what it's doing is very persuasive. Well, I think that's, but let me, I've spent, yeah, this has been a hard issue for me to figure out. Maybe it's not hard for the other folks here. But I think it doesn't look like there's four-circuit law that tells us whether this is a state court or not. We've got four cases in 50 years from our other circuits that are split. We've got some Supreme Court cases going back 100 years or more that may give us some hints. And I may think some of those are a little better hints than other hints. But it's not a, to me, the question of state law is murky. And maybe we've got to figure out from that murkiness what it is. But I want you to just kind of put that aside and say, if we're looking at the ordinary public meaning of what state courts means in at least 1948 when this statute was created, what is that and what's the basis of it? Well, so I'm not sure it's as of 1948 that the meaning controls because the Supreme Court has held that when the judicial code was recodified in 48, no substantive change was made. You pick the year. You tell me the year and you pick what the ordinary public meaning was at that time and tell me what the basis of that is. All right. So looking at, the best way that I can understand how the term state court was used in the previous statutes that were recodified in the 48 code is to look at the way the Supreme Court construed those provisions. And what the Supreme Court said in Road Improvement District in Prentiss in Upshur County is essentially that when a state tribunal wields the state's judicial authority using adjudicatory procedures to decide disputes between private parties of the sort that courts decide, it is a state court. Yeah, but I'm trying to get you away from that. Not that I don't appreciate that argument. The Prentiss argument, I think, helps on that, but there's a Bragg-Weaver case that complicates that. So I'm trying to say that the Supreme Court, at least hypothetically, is murky. And how do we normally look at ordinary public meaning? You normally look at things like dictionaries or geeky stuff like that, like corpus linguistics and things like that. I mean, is there anything that you have in that realm that helps us understand what state courts means? I certainly don't have any corpus linguistics to offer, Your Honor. But the dictionary definitions I've seen are essentially consistent with the way that the Supreme Court characterized it in those cases. I would certainly be happy to file a letter today or tomorrow, if you like, with some dictionary definitions that would be helpful. But they essentially boil down to the same thing, which is, is this a court? Is it a tribunal that does what courts do in terms of how it's structured, the kinds of disputes that it deals with, and the way that it goes about deciding them? And really, I think whether you apply the functional test that this court already adopted under Section 1442, or whether you apply a narrower definition of state court, the Corporation Commission in this kind of proceeding counts. I understand, of course, that Virginia law is not dispositive on this question, but it is very persuasive. And every indicator under Virginia law tells you that in this case, the Corporation Commission is a court. In fact, as it happens right now, the Corporation Commission has just one member, he has two law degrees, and he is described on the Corporation Commission's website as Judge Hudson. And what he was doing, or what he would be doing in this case, if it had not been removed, is, as the Virginia Supreme Court said in Boulevard Bridge, acting as an umpire in a judicial capacity to decide a dispute between two private parties about a property interest. And that is a classic judicial task. Are you saying there's nothing for the state court to do once the SCC makes its determination and permits the filing of a suit? The question is already answered. There's nothing really for the state court to do except to apply the rubber stamp. What would be left for the state court to decide, Your Honor, would be compensation. So that certainly could be a substantial issue. But on the merits of whether Zaya would be entitled to take our property, yes, the Corporation Commission's decision would be dispositive. And that's because the Commission's certificate itself is the authority for the taking under Virginia Code 25.1-206. The other elements are necessity and public use. And by definition, the Corporation Commission's determination of public necessity or an essential public convenience is dispositive of those issues, and the Virginia Circuit Court cannot second-guess the Corporation Commission's decision. That's why Zayo's petition, which we removed, does not only ask for permission to file a condemnation suit. It also asks the Commission to rule that a public necessity or an essential public convenience requires that Zayo may take the property by condemnation proceedings. That's at JA-27. And for that matter, we explained all of this, the preclusive effect of the Corporation Commission's rulings, in our opposition to the remand motion, at the hearing, in the district court, and again on our appellate brief at page 37. Zayo has never disputed any of this until Mr. Hurd just stood up just now to tell you that necessity isn't part of the circuit court proceeding, which, of course, it is under the statute. So the upshot is that this is the appropriate time to raise defenses that go to Zayo's entitlement to take our property. As you said, Judge Harris, there is no practical reason to make the parties and the Corporation Commission wade through this proceeding under state law when federal law forecloses the entire proceeding to begin with. Maybe there's no practical reason, but Congress used the term state court. They didn't use the term state court for agencies doing judicial things. So whether or not that makes a lot of practical sense, we've got to deal with two words in a statute that don't read on their face as broad as you're talking about it. Now, maybe we do a functional analysis and we get to that point. But that's a reason, I think, to just not go that it does make a difference. Well, certainly, Your Honor, if you ultimately conclude that the Corporation Commission is not a state court in any possible sense, then yes, you would have to conclude that removal was improper. But in the course of doing that, as you asked, I think, Your Honor, it still makes sense to address the complete preemption issue for a couple of reasons. One, that is an independent element of removal because it goes to whether the court had original jurisdiction. And two, as Judge Harris pointed out, when all of the district courts in this circuit apply the functional analysis that this court adopted in Kolobash, they ask about the weight of the federal and state interests in the proceeding. And this court held in Skidmore that the federal interest in preserving property as part of the National Rail Network is paramount. So certainly, if you do the functional analysis, I think you have to reach a complete preemption in order to determine whether a federal interest weighs in favor of a federal forum here because that's what the court said in Skidmore. In this kind of case, federal courts must be the ones to decide the claims. Can I ask a question to follow up on that? Of course. And I asked your colleague this question. It seemed if hypothetically we say there's complete preemption, Skidmore, if not, is controlling it, takes us so far enough where we really can't principally distinguish it. And we hypothetically decide the SEC is not a state court. So we've got a determination that this is an exclusive federal matter and a determination that one of the elements of removal was not proper. What happens there? I assume then the case would be remanded to the Corporation Commission and we would say, you're done, there's nowhere else to go here because the federal courts have conclusively determined that this is an exclusively federal issue. And so if there were complete preemption, then a for surei, there would be ordinary preemption, even on my friend's view of the statute. But we'd have to, we couldn't, I kind of posed the scenario that that is, that's a, that's requiring us to do something for no legitimate purpose. That may be true, but as a matter of jurisdiction, it probably has to go back. Is that what you think? If you concluded that the Corporation Commission was not a state court, then yes, it would have to go back. Well, I have struggled with the same question because it sure seems like that ought to be a null set, right? That kind of couldn't be the outcome. And I did think there was a reading of Calabash where the court almost did seem to be suggesting, like, you know what a state court is for removal purposes? It's where you have an exclusively federal interest, in that case it was this federal officer, and then some state entity is trying to assert state process that would require him to appear in a non-federal forum. That thing that did that, that's a state court for removal purposes. And that would sort of bridge this gap. It's a broad reading of Calabash, but I kind of think it's in there. Yes, so I think that's exactly right, Your Honor. And so let me be clear, when I say if you conclude the Corporation Commission isn't a state court, you have to send it back, I'm encompassing the functional inquiry in that statement. So certainly you could conclude, as Calabash did conclude, that even if it is not technically a state court in the sort of ordinary sense in which we think of it, that it is close enough to being a state court in terms of the authority it wields, the procedures that it uses, and in particular what it is trying to do here that the federal interests do justify removal. And I think that would be completely consistent with the Supreme Court cases going all the way back 150 years. Now, my friend responded, but ultimately this is about the delegation of eminent domain authority, which is a sovereign interest. But the Supreme Court said in several of those cases, including Road Improvement District, that the fact that eminent domain is a sovereign interest does not justify rejecting removal. And of course here, the federal interest is supplied by complete preemption, which is overriding state law by definition. Judge Quattlebaum, as you said, Skidmore, if it doesn't go all the way to deciding this case on complete preemption, it gets you 98% of the way there. Because Skidmore holds unequivocally that state law claims that would take either a fee simple interest or an exclusive property interest in railroad property that is part of the National Rail Network are completely preempted. My friend agrees that exclusive claims and fee simple claims are completely preempted, and he also concedes on page 38 of his brief that the petition filed in the Corporation Commission sought an exclusive property interest. This is what he says describing the amended complaint. Instead of being exclusive, as the original easement recited, the modified easement was explicitly non-exclusive. Your Honors, that is the ball game, because under Skidmore, exclusive property interests are unequivocally completely preempted. And that is, frankly, the only way that you can read the Corporation Commission petition that Zaho filed, which seeks to condemn the duct and the underlying property interests and says nothing about an easement, let alone a non-exclusive one. So Judge O'Grady was exactly right that the petition filed in the Corporation Commission falls squarely under Skidmore, and that gets you complete preemption. Can I ask a question about your view of Skidmore and the requirement, number two, I think, of a federal cause of action in a matter of national importance or significance? In Skidmore, we say as long as there's a federal cause of action, it doesn't matter that it touches the nature of the harm or provides any type of remedy. There's a federal cause of action, and the fact that there is one is enough. I know that's our law, but that seems to essentially eliminate any distinction between complete preemption and ordinary defensive preemption. I mean, that's not really an issue for us right now, perhaps, but that seems to conflate those two types of preemption. Do you agree? So I don't agree that it conflates them, Your Honor, because as Judge Harris said, Skidmore basically holds that complete preemption and ordinary preemption under the ICTA are coextensive. So it's not that it's sort of blurring them together. It's just recognizing the scope that Congress chose in which to displace state law entirely. But isn't the reason that, I mean, complete preemption essentially says regardless of what's in your well-pleaded complaint, we're going to construe this as a federal cause of action. Yes. Ordinary preemption goes by what's in your complaint, and you get to assert as a defense that despite what's in your complaint as a state law claim, in state court, you allege preemption. And I thought the reason for that was that there's a cause of action that actually matters. Our Skidmore case says as long as there's a cause of action, it may not matter. And sure, anyway, that's not the way I thought complete preemption works, but we've got a case that says it, and we may be bound by it, and it's probably not your job to agree with me or disagree with that. But it just seems like that's taken complete preemption in a different direction. Well, two points in response, Your Honor. One, of course, I do agree that Skidmore is conclusive on this issue, and so it doesn't require that the cause of action line up with the state cause of action. That said, there is actually a state cause of action that does line up, which was described in our notice of removal. I think that's at JA-14. There is what's called an adverse abandonment proceeding under the ICTA, which can be brought either before the Surface Transportation Board or by a suit in a district court, which would then refer it to the STB, in which somebody like Zao could ask the STB essentially to remove property from the National Rail Network. So you think a claim like, what's the statutory basis for that claim? I thought the only one was that statute that said there's a claim for acts and omissions or challenges to rights. Yeah, so it's part of the Interstate Commerce Act that was not changed by the ICTA, so it actually goes back about 80 or 100 years now, and the Supreme Court has recognized it, the STB has as well, that although railroads traditionally are the ones petitioning for abandonment of railroad property in front of the STB, somebody can do so adversely if they feel that the property is not essential to the railroad's operations, and the board can then make that determination. So even if you do think that complete preemption requires a cause of action that fits more closely, which I would say Skidmore does not require, that requirement is satisfied here as we laid out in our notice of removal. To make sure I understand, are all non-exclusive easements preempted as a matter of law? No, Your Honor, my friend said several times that that is our position, so let me be crystal clear about this. We are not saying that all underground utility easements are preempted. In fact, the vast majority of them are not preempted, but those are routine, non-conflicting, non-exclusive crossing easements for things like grade crossings and sewer lines. And that's because over decades now, the railroad industry and municipalities have developed, you know, basically tried and true ways to avoid any sort of But that is not true of what Zao is asking for here, and there is no STB decision that draws the boundary that Zao has asserted. My friend points you to a number of STB decisions, but all of those are about the distinction between, as you said, Judge Harris, sort of express categorical preemption and then implied as applied preemption. And ironically, in the only one of those that actually addresses complete preemption, the board says, these crossing cases are typically resolved in federal court. When federal preemption issues are raised, they may be removed to federal court, and that's MAMI, which was quoted in our brief. So to the extent you do want to look to the STB's discussion about crossing disputes, you'll find that the board agrees that removal jurisdiction is proper here. Thank you. So my friend has made an interesting concession. He concedes that, well, at least easements that go this way are not preempted. But he cites no authority to distinguish between easements that go this way underground and easements that go this way underground. He cites no authority to say these are completely preempted and these are not. The fact is that all of these easements are subject to an as-applied preemption inquiry. None of them are completely preempted. And Skidmore does not address any underground utility easements going this way or this way. So that case does not govern here. Now, with respect to whether this is a court or not, the Virginia Supreme Court has said that the SEC possesses judicial, legislative, and Which were they exercising here as a matter of federal law? Well, we are told, opposing counsel, that the question is, is this the sort of issue that courts handle? Do courts handle the allocation of state eminent domain authority, granting authority to someone who has not had it before? No. Legislatures handle the delegation of eminent domain authority or, in this case, SEC to whom they have given that delegation authority. Now, opposing counsel cites Virginia Code Section 4.1-39 saying, well, what the SEC does cannot be challenged collaterally in a state court. But that is not the issue here. The issue here is whether you have a federal preemption claim which can be issue before the State Corporation Commission. Can I ask you to address something in terms of whether this is a state court or not and what state court means under 1441? So we have interpreted the same language, state court, in 1442 in the Corbush case or whatever it's called. You know, these are two provisions. I think I'm right about this. They're adopted at the same time. They're sequential. They both use the term state court in the same context. You know, it has to either originate in state court or it's filed in state court, but it's the same idea. And is there a way that we can interpret that term to mean one thing in Section 1442 but something different in 1441? Yes, Your Honor. There is. We recognize that the ordinary rule is that you use the same language to mean the same thing. But that rule of construction of statutes must give way to basic principles of federalism. Well, why wouldn't the principles of federalism be pretty similar in the two? Well, when you're looking at 1442, that must be construed broadly to protect the federal officials from state interference in the discharge of their duties. 1441 doesn't involve any of that. And there, the statute must be construed narrowly to protect the state sovereignty and state courts from the consequences of language in a statute that is at best ambiguous. The Supreme Court has said. Right. I do understand what you're saying, but it seems like you'd want to do that, maybe interpreting some of the other terms of the two provisions and maybe in other ways. But I still am having trouble figuring out how, regardless of what our sort of underlying presumptions are, the same two words, state court, mean one thing and one and another thing and the other when they were adopted at the same time right next to each other.  Well, so you've got. Like, we're not talking about, like, I do understand this is just like a canon. And if these two things had been, you know, in separate sections, adopted 30 years apart from each other, we maybe would take, we would apply that again with a different level of rigor. But it's very hard to believe that the same Congress, you know, who adopted these things together back to back, thought state court would mean one thing and one and state court would mean something different. I understand the argument, Your Honor, but principles of federalism point in opposite directions. 1441 versus 1442. If I may, there's three important distinctions here. I ask the Court to keep in mind. A distinction between delegating authority to ZAO to file a lawsuit for condemnation and the actual filing of that lawsuit. A difference between taking the surface of the land and taking an underground utility easement or something tantamount to an easement. And while all easements are, some easements are called not exclusive, you that little hole, through that little duct. So whether you call it exclusive or not, it winds up being that way. Finally, an important difference between complete preemption and as applied preemption. Complete preemption does not apply here. The State Corporation Commission's decision, whether you call it judicial or legislative, and they will have that chance. I've told this Court, and I'll say it again, we will not claim res judicata or estoppel if they go into the State Circuit Court and raise preemption. We will not say, because we cannot say, that the SEC's decision precludes them somehow from raising their federal claims. Thank you very much.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Kenneth D. Bell